IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br> )<br>    **Plaintiff,** )<br> )<br>v. )<br> )<br>GINO CARLUCCI, )<br> )<br>    **Defendant.** )<br>_____)  | CRIMINAL ACTION<br><br>No. 10-00464-01-KHV |

**MEMORANDUM AND ORDER**

On August 16, 2012, the Court sentenced defendant to 188 months in prison. This matter is before the Court on defendant's Emergency Motion For A Reduction In Sentence Pursuant To 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. #504) filed April 30, 2020. Defendant seeks compassionate release because of the Coronavirus Disease-2019 ("COVID-19") pandemic. For reasons stated below, the Court dismisses defendant's motion for lack of jurisdiction.

**Factual Background**

Defendant currently is confined at the USP Tucson satellite camp, a Bureau of Prisons ("BOP") facility in Tucson, Arizona. As of May 17, 2020, no inmates and only one staff member at USP Tucson had tested positive for COVID-19. See BOP, COVID-19 Cases, https://www.bop.gov/coronavirus/ (accessed May 18, 2020). Defendant states that because of cardiothoracic surgery in 2005, he has been "diagnosed for chronic care." Emergency Motion (Doc. #504) at 1. Defendant does not explain if his condition impacts his risk of contracting COVID-19, but he states that inmates generally are at a heightened risk of contracting the disease because they live in close quarters. Id. at 3–4.

On April 15, 2020, defendant requested home confinement under the recently-enacted

Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. Law 116-136 (enacted March 27, 2020).  See Exhibit 2 to Government's Response To Defendant's Motion For Compassionate Release (Doc. #509) filed May 14, 2020.  The BOP denied his request, but it allowed defendant to submit a renewed request.  On May 6, 2020, defendant submitted a second request for relief under the CARES Act.  See Exhibit 3 to Government's Response To Defendant's Motion For Compassionate Release (Doc. #509).  The BOP currently is reviewing defendant's request.  See Government's Response To Defendant's Motion For Compassionate Release (Doc. #509) at 4.

## Analysis

A federal district court may modify a defendant's sentence only where Congress has expressly authorized it to do so.  See 18 U.S.C. § 3582(b)–(c); United States v. Blackwell, 81 F.3d 945, 947 (10th Cir. 1996).  Congress has set forth only three limited circumstances in which a court may modify a sentence: (1) upon motion of the BOP Director or defendant under Section 3582(c)(1)(A); (2) when "expressly permitted by statute or by Rule 35" of the Federal Rules of Criminal Procedure; and (3) when defendant has been sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission."  18 U.S.C. § 3582(c).  Defendant seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A).

**I.      Jurisdiction To Grant Relief Under 18 U.S.C. § 3582(c)(1)(A)**

Under the First Step Act of 2018, Pub. Law 115-391 (S. 756), 132 Stat. 5194 (enacted Dec. 21, 2018), after considering the applicable factors set forth in Section 3553(a), the Court may order compassionate release for "extraordinary and compelling reasons."  18 U.S.C. § 3582(c)(1)(A)(i).  The Court may entertain requests for compassionate release only upon a

motion of the BOP, however, or of defendant after defendant "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).

The requirement to exhaust administrative remedies or wait 30 days after the warden receives a request is jurisdictional.  See United States v. Read-Forbes, No. 12-20099-01-KHV, 2020 WL 1888856, at *3–5 (D. Kan. Apr. 16, 2020).  Defendant states that on April 15, 2020, he submitted a request to the warden for compassionate release or to be placed on home confinement. In fact, defendant's request appears limited to one for home confinement under the CARES Act. See Exhibit 2 to Government's Response To Defendant's Motion For Compassionate Release (Doc. #509) at 13 (BOP reviewed case "for Home Confinement with the guidance from the Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic Memorandum dated March 26, 2020, by the Attorney General.").  Even if defendant also had submitted a request under the compassionate release statute, he has not shown that the BOP responded to that request or that 30 days passed before he filed the instant motion.  Because defendant has not alleged that he exhausted administrative remedies or that 30 days have elapsed since he submitted a request for relief to the warden at USP Tucson, the Court lacks jurisdiction to grant relief under Section 3582(c)(1)(A).

Even if the Court construed the administrative exhaustion requirement of Section 3582(c)(1)(A) as a claims-processing rule rather than a jurisdictional limitation, the statutory rule would still bar defendant's motion at this time.  See Read-Forbes, No. 12-20099-01-KHV, 2020 WL 1888856, at *4.  In contrast with judicially created exhaustion requirements,

the Court lacks discretion to excuse defendant's failure to comply with a mandatory statutory requirement to exhaust administrative remedies.  Malouf v. Sec. & Exch. Comm'n, 933 F.3d 1248, 1256 (10th Cir. 2019), cert. denied, 2020 WL 1124531 (U.S. Mar. 9, 2020); see Ross v. Blake, 136 S. Ct. 1850, 1857 (2016) (exhaustion statutes like Prison Litigation Reform Act of 1995 establish mandatory exhaustion regimes, foreclosing judicial discretion).  The COVID-19 pandemic is no exception.  See United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) (despite COVID-19 pandemic, failure to exhaust presents "glaring roadblock" foreclosing compassionate release at this point); United States v. Feiling, No. 19-CR-112-DJN, 2020 WL 1821457, at *5 (E.D. Va. Apr. 10, 2020) (mere existence of COVID-19 among prison population and inmate's susceptibility to it do not justify waiver of exhaustion requirement); United States v. Epstein, No. CR 14-287-FLW, 2020 WL 1808616, at *5 (D.N.J. Apr. 9, 2020) (despite danger posed by COVID-19 pandemic, district court cannot waive exhaustion requirement).

Whether the exhaustion requirement is jurisdictional or a claims-processing rule, sound policy reasons support the requirement that defendant must first present to the BOP his request for a reduced sentence.  The exhaustion requirement helps prevent premature claims and ensures that the agency possessed with the most expertise be given first shot at resolving defendant's request. See Forest Guardians v. U.S. Forest Serv., 641 F.3d 423, 431 (10th Cir. 2011).  Because defendant is in BOP custody, the BOP is in a better position to initially determine his medical needs, his specific risk of COVID-19 and the risk to inmates generally at the USP Tucson satellite camp, the risk to the public if he is released and whether his release plan is adequate.  See Epstein, 2020 WL 1808616, at *4; see also United States v. Dickson, No. 19-CR-251-17, 2020 WL 1904058, at *3 (N.D. Ohio Apr. 17, 2020) (BOP better positioned to understand inmate health and circumstances

relative to entire prison population and identify extraordinary and compelling reasons for release). Likewise, the BOP is in a better position to coordinate any request for relief under Section 3582(c)(1)(A) with the exercise of its discretion to place a prisoner in home confinement under Section 3624(c)(2).

In sum, because defendant has not shown that he has exhausted administrative remedies or that 30 days have passed since the warden received his request for the BOP to file a motion for relief, the Court lacks jurisdiction under Section 3582(c)(1)(A).

## II.     BOP Authority Under The CARES Act

As noted, defendant has requested that the BOP release him to home confinement under the CARES Act. The BOP may "place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months," 18 U.S.C. § 3624(c)(2). Under the CARES Act, "if the Attorney General finds that emergency conditions will materially affect" BOP functioning, the BOP Director may "lengthen the maximum amount of time for which [he] is authorized to place a prisoner in home confinement" under Section 3624(c)(2). Pub. L. 116-136, § 12003(b)(2).  On April 3, 2020, the Attorney General declared that because of COVID-19, "emergency conditions are materially affecting the functioning" of the BOP so that the BOP Director now has authority to grant home confinement to a larger grouper of prisoners. See Memorandum from Attorney Gen. William Barr to Dir. of Bureau of Prisons, Apr. 3, 2020, https://www.justice.gov/file/1266661/download.  While the CARES Act gives the BOP broad discretion to expand the use of home confinement during the COVID-19 pandemic, the Court lacks jurisdiction to order home detention under this provision. See United States v. Engleson, No. 13-CR-340-3(RJS), 2020 WL 1821797, at *1 (S.D.N.Y. Apr. 10, 2020) (while court can recommend,

ultimate decision whether to release inmate to home confinement rests with BOP).

**IT IS THEREFORE ORDERED** that defendant's Emergency Motion For A Reduction In Sentence Pursuant To 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. #504) filed April 30, 2020 is **DISMISSED for lack of jurisdiction**.

Dated this 18th day of May, 2020 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge
